**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**

SYDNEY CARL FRASIER,

     *Plaintiff,*

v.                              CASE NO. 1:14-cv-00009-MP-GRJ

SHERIFF BOBBY MCCALLUM, LT. SCOTT TUMMOND;
INVESTIGATOR ROGER BELL, CITY OF WILLISTON,
LT. MATTHEW C. FORTNEY,

     *Defendants.*

_____/

**O R D E R**

     This matter is before the Court on Doc. 69 and Doc. 72, Motions for Summary Judgment by Defendants Lt. Matthew C. Fortney ("Fortney"), City of Williston ("Williston"), Lt. Scott Tummond ("Tummond"), and Investigator Roger Bell ("Bell"), as well as Docs. 80 and 81, Responses in Opposition to Motions for Summary Judgment by Plaintiff Sydney Carl Frasier ("Frasier").

     This case involves multiple claims by Plaintiff. As to Defendants Fortney, Tummond, and Bell, Plaintiff asserts claims for wrongful arrest pursuant to 42 U.S.C. § 1983, civil battery, and intentional infliction of emotional distress ("IIED"). (Doc. 43). Plaintiff claims that his arrest by the Defendants on August 2, 2012 – which was undisputedly based on law enforcement's mistaken identity of Frasier – violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (Doc. 43). As to Defendant Williston, Frasier claims that his physical and emotional injuries are a result of Williston's negligent hiring,

training, and supervision of Fortney. (Doc. 43). Finally, Frasier claims that Williston is vicariously liable for Fortney's conduct under the doctrine of *respondeat superior*.[1] (Doc. 43).

In response, Defendants Tummond and Bell assert that they are protected against Frasier's claims under the doctrine of qualified immunity. (Doc. 69). Defendant Fortney raises the same affirmative defenses, but also claims that is not subject to Plaintiff's § 1983 claim, because as a police officer, he was unable to arrest Frasier. (Doc. 72). Finally, Defendant Williston asserts that Frasier – during the course of discovery – has not established any facts supporting claims for negligent hiring, training, and supervision. (Doc. 72).

For the following reasons, the Court finds that 1) Defendants Fortney, Tummond, and Bell are entitled to qualified immunity against Frasier's claim under 42 U.S.C. § 1983; 2) the alleged physical injury experienced by Frasier was incident to his arrest, and therefore not actionable as battery; 3) Fortney, Tummond, and Bell's conduct does not rise to the level of outrageousness required to support a claim of IIED; 4) no facts support a claim for negligent hiring, training, or supervision against Williston; and 5) there is no basis for a claim of vicarious liability against Williston for the actions of Fortney.

## I. BACKGROUND

The facts of this case are as follows: on August 2, 2012, as part of the Levy County Sheriff's Office's ("LCSO") "Operation Clean Sweep," Bell and Tummond of LCSO – assisted by Fortney of the Williston Police Department – went to Frasier's home in Williston, Florida,

---

[1] Plaintiff asserts the same claims of negligent hiring, training, and supervision, as well as vicarious liability through *respondeat superior* against Defendant Sheriff Bobby McCallum in his official capacity as Sheriff of Levy County. (Doc. 43). Plaintiff suggests that this count of the complaint – by and through Sheriff McCallum – constitutes a claim against the Levy County Sheriff's office. (Doc. 43). Sheriff McCallum remains a party to this suit, but was not included in either Motion for Summary Judgment submitted by Defendants. (*See* Docs. 69, 72).

having obtained a warrant to arrest Frasier's brother, Keith Frasier. (Docs. 43, 69, 72). LCSO

had information suggesting that Keith was staying at Frasier's home with their sick mother.

(Docs. 69, 72). LCSO information also suggested that officers would find a white BMW used by

Keith, with a certain tag number, parked outside of Frasier's home. (Doc. 80, Ex. 3, 4). When

officers arrived, they observed a white Mercedes with a tag number matching the one provided

to them parked outside of Frasier's home. (Doc. 80, Ex. 5) For identification purposes, officers

also brought a "DAVID" photo of Keith to Frasier's home, but did not take it with them when

they approached the home. (Doc. 69).

    Fortney and Bell approached the home and knocked on the door, while Tummond stood

further back. (Doc. 80 at Ex. 8). Frasier answered the door, wearing only a t-shirt, socks, and

boxer shorts. (Doc. 80). The record indicates that Sydney and Keith Frasier are the same race,

are closely related in age, and are direct descendants from the same gene pool. (Doc. 69). Frasier

asserts that he is five feet eight inches tall and weighs 220 pounds, while Keith is approximately

five feet four inches tall and weighs approximately 195 pounds. (Doc. 69, citing Deposition of

Frasier, 91:6-16). Frasier also asserts that he, unlike his brother, has gold front teeth. (Doc. 80).

This distinction, however, was not visible in Keith's DAVID photo. (Doc. 69).

    Mistakenly identifying Frasier for his brother Keith, Fortney and Bell told Frasier to step

outside, and informed him that he was under arrest. The specific facts surrounding Frasier's

arrest are somewhat ambiguous,[2] but taking them in the light most favorable to the Plaintiff, the

Court accepts that Frasier told Fortney and Bell more than once that he was not Keith Frasier.

(Doc. 80). Fortney nevertheless held Frasier's hands behind his back, and Bell detained Frasier

---

[2] According to Defendant Bell, Fortney advised him that "he was familiar with the suspect – Keith Frasier – and that he knew the guy" (Doc. 80-1 at 14; Exhibit 5, Deposition of Bell, 38:19-23). Based on this statement, Bell asserts that he relied on Fortney to identify Keith Frasier.

using "flexcuffs," a single-use item used in place of metal handcuffs.[3] (Docs. 69, 80). Frasier was led out of his home, wearing only his t-shirt, boxer shorts, and socks,[4] and was placed in a police car driven by Williston Police Department Officer Robert Proctor.[5] (Doc. 80).

While driving to a second location, Fortney radioed Officer Proctor to confirm that they arrested the right person. (Doc. 80). Fortney testified that he misheard Officer Proctor's response, which informed him that the suspect was named Sydney Frasier, while Bell testified that he heard Officer Proctor say Keith rather than Sydney. (Doc. 80). However both Fortney and Frasier testified that they knew one another, as Fortney had responded to incidents at Frasier's home in the past. (Doc. 80). Both testified, however, that they did not know each other by name.

While detaining Frasier, Bell apparently improperly affixed the flexcuffs, resulting in pain and discomfort. (Doc. 80; see also Ex. 5, Deposition of Bell, 91:25-92:2). Frasier informed Fortney and Bell that the flexcuffs were hurting him, but no officer on the scene had the necessary tool to properly remove flexcuffs. (Doc. 80). Tummond testified that he attempted to loosen the flexcuffs with his pocket knife, which only resulted in them tightening. (Doc. 80 at Ex. 8). Frasier asserts that he was in the flexcuffs for "at least 45 minutes." (Doc. 69, quoting Deposition of Frasier, 59:25).

Frasier was taken to the Levy County Jail, where after a short time, officers determined they had arrested Sydney rather than Keith Frasier. (Doc. 69). Frasier asserts that he was at the

---

[3] Tummond and Bell assert that they used flexcuffs rather than metal handcuffs because each officer is responsible for his or her own pair, and because the officers were making "mass arrests" as part of the operation, Bell utilized the single-use cuffs made available by the Department. (Doc. 69).

[4] Fortney asserts that he offered to get Frasier a pair of pants, but Frasier would not allow Fortney to enter his room. Frasier admits, however, that he declined an officer's offer to obtain shoes for him because he did not want the officer in his room. (Doc. 69, citing Deposition of Frasier, 119: 1-20, 66: 3-23).

[5] Officer Proctor was formerly named as a Defendant in this action; however, he was dismissed on Doc. 68. Two other Defendants have also been dismissed: Chief Dennis Strow, on Doc. 68, and Investigator Rob Bowers, on Doc. 47.

jail for "about an hour" total. (Doc. 69, quoting Deposition of Frasier, 65:24, 67:9-12). The entire ordeal was at most seven hours. (Doc. 69, citing Deposition of Frasier, 125:10-24).

This matter is currently before the Court on Motions for Summary Judgment by Defendants Fortney, Williston, Tummond, and Bell. (Docs. 69, 72). Plaintiff Frasier responded with memoranda in opposition. (Docs. 80, 81). The primary issue at summary judgment is whether Defendants Fortney, Tummond, and Bell are entitled to qualified immunity against Frasier's claim under 42 U.S.C. §1983. More specifically, at issue is whether Fortney, Tummond, and Bell's conduct was objectively reasonable as a matter of law. Also at issue in this case is whether Defendants Fortney, Tummond, and Bell committed battery against Plaintiff; whether Defendants Fortney, Tummond, and Bell caused IIED; whether Plaintiff has established sufficient evidence to prove that Williston negligently hired, trained, and supervised Defendant Fortney; and whether Defendant Williston is responsible for negligence under a vicarious liability theory.

## II. DISCUSSION

A.    *Summary Judgment*

It is well established that "summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party." *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836-37 (11th Cir. 2006); *see also* Fed. R. Civ. P. 56©; *Cellotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment will fail if the nonmoving party

shows that there is more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Though the parties draw rather different inferences from the facts presented, the facts themselves are sufficiently undisputed to make this controversy ripe for summary judgment.

B.      *Qualified Immunity*

Qualified immunity offers complete protection for government officials when sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Supreme Court established an objective reasonableness test to determine whether a public official is entitled to receive qualified immunity. *See Harlow*, 457 U.S. at 815–19. This objective reasonableness test affords broad qualified immunity protection to government officials to allow them to perform discretionary duties without the fear of personal liability in lawsuits, except in those involving "the plainly incompetent or those who knowingly violate the law." *Vinyard*, 311 F.3d at 1346 (citing *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)); *see also Jackson v. Humphrey,* 776 F.3d 1232, 1241-42 (11th Cir. 2015); *Hudgins v. City of Ashburn, GA*, 890 F.2d 396, 402 (11th Cir. 1989).

In *Rich v. Dollar*, the Eleventh Circuit reaffirmed its two-part analysis for applying the objective-reasonableness test for qualified immunity. 841 F.2d 1558, 1563–64 (11th Cir. 1998). First, the defendant public official must first prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* at 1563 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)). Once the defendant public official satisfies his

burden, the burden then shifts to the plaintiff to show lack of good faith on the defendant's part,

which may be met by "demonstrating that the defendant public official's actions 'violated clearly

established constitutional law.'" *Id.* at 1564 (quoting *Zeigler,* 716 F.2d at 849).

Applying the Eleventh Circuit objective reasonableness test to this case, it must first be

determined whether the officers, acting at the direction of their employers, were performing

duties within the scope of their discretionary authority when they mistakenly arrested Frasier.

*See Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *Hutton v. Strickland*, 919 F.2d 1531,

1537 (11th Cir. 1990); *Hudgins*, 890 F.2d at 404. A government official proves that he acted

within the purview of his "discretionary authority by showing 'objective circumstances which

would compel the conclusion that his actions were undertaken pursuant to the performance of his

duties and within the scope of his authority.'" *Rich*, 841 F.2d at 1564 (quoting *Barker v.

Norman*, 651 F.2d 1107, 1121 (5th Cir. Unit A 1981)).

No party disputes that Tummond and Bell's actions – arresting an individual pursuant to

a valid warrant – were undertaken pursuant to the performance of their duties and within the

scope of their authority. Fortney, however, asserts that he did not arrest Frasier, as Fla. Stat. §

901.04 prevents city law enforcement officers such as Fortney from executing arrest warrants.

(Doc. 72). However, the Eleventh Circuit has held that an arrest warrant obtained by a city law

enforcement officer with the cooperation of a county sheriff is performed in an authorized

manner and is within the scope of the city law enforcement officer's discretionary authority. *Pair

v. City of Parker, Fla. Police Dep't,* 383 F. App'x 835, 839 (11th Cir. 2010). Florida law requires

a sheriff to execute the arrest warrant, but a city law enforcement officer may, with cooperation

of the sheriff, make an arrest. *Id.*; *see also* Fla. Stat. § 901.04. Accordingly, this Court finds that

Fourtney was acting within the scope of his discretionary authority when, at the direction of the LCSO, he arrested Frasier with Tummond and Bell's assistance.

Having established that Fortney, Tummond, and Bell were acting within the scope of their authority when they arrested Frasier, the Court must next determine whether the facts demonstrate that Defendants' conduct violated Plaintiff's constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In *Saucier*, the Supreme Court found that "if no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[6] *Id.*; *see also GJR Invs. v. County of Escambia*, 132 F.3d 1359, 1367 (11th Cir. 1998) ("if a plaintiff has not sufficiently alleged a violation of any constitutional right, it is axiomatic that the plaintiff likewise has failed to allege the violation of a 'clearly established' right.").

However, if the Court finds that a constitutional right has been violated, the Court must then determine whether that right was "clearly established." *Id.* To determine whether the law is "clearly established," the standard is not whether preexisting law provides a set of "materially similar" facts, but "whether the state of the law [at the time in question] gave [the defendants] fair warning that their alleged [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

In *Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002) the Eleventh Circuit used *Hill v. California*, 401 U.S. 797 (1971), to discuss the proper standard in a qualified immunity analysis where officers execute a mistaken arrest based on a facially valid warrant. In *Hill v. California*,

---

[6] In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court reconsidered the test established in *Saucier* and concluded that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. This Court has exercised such discretion and determines that the test in *Saucier* is appropriate in this case.

the Supreme Court determined that in a criminal case, the mistaken arrest of one person (for whom probable cause to arrest *does not* exist) based upon the misidentification of that person as a second person (for whom probable cause to arrest *does* exist) did not violate the Constitution. Specifically, the Court held that "when the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill,* 401 U.S. at 802.

Applying *Hill*, the Eleventh Circuit held that "[t]he same 'reasonable mistake' standard applies (1) in the context of a section 1983 action and (2) when the police have a valid warrant —as opposed to just probable cause—to arrest someone, but mistakenly arrest someone else due to a misidentification." *Rodriguez*, 280 F.3d at 1346. This Court must then determine as a matter of law whether Defendants Fortney, Tummond, and Bell's mistaken arrest of Plaintiff, pursuant to the execution of a valid arrest warrant for a different individual, was beyond the scope of "reasonable mistakes." *Id*. The Court "must evaluate the totality of the circumstances surrounding the arrest to determine its reasonableness." *Id.* at 1347.

In the instant case, Plaintiff alleges that the Defendants' actions leading to his mistaken arrest were not reasonable because 1) he told Defendants that he was not Keith Frasier; 2) Defendants did not compare his image against the DAVID picture they had of Keith Frasier; 3) Defendants did not ask Plaintiff for or review Plaintiff's valid driver's license before arresting him; 4) he is approximately four inches taller and twenty-five pounds heavier than Keith Frasier; and 5) he, unlike Keith, has gold front teeth. (Doc. 43; Doc. 80).

At the outset, this Court recognizes that an arresting officer is not obligated to accept plaintiff's statements of mistaken identity as true. *See Rodriguez,* 280 F.3d at 1348 n.15 ("arresting police officers need not act as judges determining ultimate facts."). And further, in

determining whether the Defendants' mistake was objectively reasonable, "[t]he question is not whether the police could have done more; but whether they did just enough." *Id.* "There are limits on how much independent investigating an officer must make before executing an arrest warrant, even when the arrested person is asserting a claim of mistaken identity." *Id*; *see also Baker v. McCollan*, 442 U.S. 137 (1979).

In deciding a similar issue at the motion to dismiss stage, the Southern District of Florida held that an officer was entitled to qualified immunity for mistakenly arresting one Sharma Ann-Marie Walker pursuant to a warrant for Shanteria Trecie Walker. *Walker v. Prieto*, 414 F. Supp. 2d 1148, 1153 (S.D. Fla. 2006). Although the plaintiff-arrestee offered the arresting officer her valid Florida driver's license to support her claim of mistaken identity, our sister court reasoned that this fact did not make the officer's mistake unreasonable. *Id.* The arrestee and the individual named in the warrant were of the same race, had similar height, the same last name, similar first names, and the same date of birth. *Id*.

While Plaintiff in the instant case has asserted that there is a four-inch height difference and twenty-five pound weight difference between himself and his brother, "a mistaken estimate of no more than five inches does not equal a constitutional violation." *Rodriguez*, 280 F.3d at 1348. It is reasonable to assume that these differences amount to similar body types between Plaintiff and his brother, further supporting the reasonableness of the Defendants' mistake. Furthermore, considering the totality of the circumstances, Defendants' arrest of Plaintiff, in spite of the weight discrepancy between himself and his brother, was objectively reasonable, especially given that weight is easily variable. *Id.* at 1348 n.14; *see also Chapman v. City of Atlanta*, 192 F. App'x 922 (11th Cir. 2006).

Thus, like the Southern District Court in *Walker*, this Court must consider all of the circumstances in aggregate. In doing so, this Court finds that Defendants' actions were objectively reasonable given the numerous similarities between the Plaintiff and his brother, the intended arrestee. And while Plaintiff also asserts that Defendants were negligent in merely relying on a DAVID photograph to identify the arrestee, there is no precedent or law enforcement regulation requiring officers to identify an arrestee with anything more. Although Plaintiff suggests that Defendants would have realized he was not the rightful arrestee had the relied on a more detailed physical identifier, such as his gold teeth, this Court cannot identify what such an identifier could be, nor is such an identification necessary at this juncture. Considering all of the facts surrounding Plaintiff's mistaken arrest, taken in the light most favorable to the Plaintiff, this Court finds that Defendants' mistakes were reasonable and Defendants are therefore eligible for qualified immunity against Plaintiff's claims.

C.      *Battery*

In the alternative, even if Defendants were not entitled to qualified immunity on Plaintiff Frasier's claims, they would still be entitled to summary judgment on Plaintiff's remaining claims of negligent hiring, negligent training, negligent retention, battery, intentional infliction of emotional distress, and vicarious liability.

Turning first to the issue of battery, Plaintiff asserts a claim of battery as a result of the injuries he sustained when Defendants Fortney, Bell, and Tummond placed him in flexcuffs. (Docs. 43, 80, 81). Plaintiff correctly points out that a battery claim for excessive force is analyzed under a reasonableness standard, examining whether the use of force is reasonably necessary to perform the officer's duties. *See City of Miami v. Albro*, 120 So. 2d 23, 26 (Fla.

Dist. Ct. App. 1960); *see also Dixon v. State*, 132 So. 684, 688 (Fla. 1931); *Hutchinson v. Lott*, 110 So. 2d 442 (Fla. Dist. Ct. App. 1959), *cert. denied*, 115 So. 2d 415 (Fla. 1959).

In his response to Defendants' motion for summary judgment, Plaintiff states that "[Defendant] Bell intentionally, wrongfully and harmfully restrained Plaintiff with flexcuffs." (Doc. 81 at 23-24). He also states that "record evidence demonstrates [Defendant] Bell placed the Cuffs [*sic*] on [Plaintiff's] wrists while [Defendant] Fortney held [Plaintiff's] arm behind his back." (Doc. 81 at 24). Plaintiff notes that he complained the cuffs were causing him pain, and says Defendant Bell admits he applied the cuffs incorrectly. *Id.* But as Defendants Williston and Fortney point out in their motion for summary judgment, under Florida law, "a police officer is entitled to use force reasonably necessary to effectuate an arrest." *Soto v. City of Miami Beach*, 26 F. Supp. 3d 1304, 1311 (S.D. Fla. 2014), *appeal dismissed* (Nov. 6, 2014). Because the Court has established Defendants' mistaken identity and wrongful arrest was reasonable, any "police contact incident to [Plaintiff's] arrest cannot form the basis of a claim for battery." *Id. See also Lester v. City of Tavares*, 603 So. 2d 18 (Fla. Dist. Ct. App. 1992); *City of Miami v. Albro*, 120 So. 2d 23 (Fla. Dist. Ct. App. 1960).

D.      *Intentional Infliction of Emotional Distress (IIED)*

Plaintiff's next claim against Defendants Fortney, Tummond, and Bell for Intentional Infliction of Emotional Distress ("IIED") fails on its merits because such a claim requires extreme and outrageous conduct. *Drudge v. City of Kissimmee*, 581 F. Supp. 2d 1176, 1195 (M.D. Fla. 2008); *Cf. Rapp v. Jews for Jesus, Inc.*, 944 So.2d 460, 466 (Fla. Dist. Ct. App. 2006) ("To successfully state a cause of action for intentional infliction of emotional distress, the plaintiff must plead 'conduct so outrageous in character, and so extreme in degree, as to go

beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" (quoting *Allen v. Walker*, 810 So.2d 1090, 1091 (Fla. Dist. Ct. App. 2002) (internal citations omitted))). "Whether alleged conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a matter of law, not a question of fact." *Gandy v. Trans World Computer Tech. Group*, 787 So.2d 116, 119 (Fla. Dist. Ct. App. 2001) (citing *Ponton v. Scarfone*, 468 So. 2d 1009 (Fla. Dist. Ct. App. 1985)). There is no evidence supporting any such outrageous conduct in this case.

Plaintiff asserts that by "haul[ing] him into his front yard, in front of his cousin and neighbors, handcuffed, shoeless and in his underwear," and by "expos[ing] him in his underwear to news reporters and photographers," Defendants Fortney, Tummond, and Bell are liable for IIED. (Doc. 80 at 24). While these circumstances were possibly embarrassing, they do not give rise to the very high standard in evaluating whether the facts alleged are sufficiently outrageous, requiring that the conduct be "beyond all possible bound of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Allen*, 810 So.2d at 1091; *see also Frias v. Demings*, 823 F. Supp. 2d 1279, 1289 (M.D. Fla. 2011) (holding that plaintiff had not established a claim for IIED based on her false arrest, even though she was wearing only a towel at the time of the arrest). Therefore, Defendants' motions for summary judgment for this claim are granted.

E.      *Negligent Hiring*

Addressing Plaintiff's claim of negligent hiring against Defendant Williston, the Court finds that this claim is without merit. To allege facts sufficient to show an employer negligently hired an employee

a plaintiff must allege facts sufficient to show that 1) the employer was required to make an appropriate investigation of the employee and failed to do so; 2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and 3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*Garcia v. Duffy*, 492 So. 2d 435, 440 (Fla. Dist. Ct. App. 1986); *see e.g.*, *Nazareth v. Herndon Ambulance Service, Inc.*, 467 So.2d 1076 (Fla. Dist. Ct. App. 1985).

During the course of discovery, Plaintiff has failed to uncover facts to support the assertion that Williston's investigation into Defendant Fortney before hiring him would have revealed his unsuitability for employment as a police officer, or that it was unreasonable for Williston to hire Defendant Fortney. For these reasons, this Court grants Defendant's summary judgment as to Plaintiff's claim of negligent hiring against Defendant Williston.

F.  *Negligent Training*

To state a claim for negligent training against a municipality for injuries resulting from a municipal officer's conduct, Plaintiff must demonstrate that the municipality's training, or failure to train, amounted to deliberate indifference to Plaintiff's rights. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); *see also Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998); *Miami-Dade Cnty. v. Walker*, 837 So. 2d 1049, 1051 (Fla. Dist. Ct. App. 2002).

The Supreme Court set forth limited circumstances when a claim for failure to train can serve as a basis of liability under 42 U.S.C. § 1983: "where the municipality inadequately trains or supervises its employees; that failure to train or supervise is a municipality policy; and that policy causes the employees to violate a citizen's constitutional rights." *Walker*, 837 So. 2d at 1051-52 (citing *City of Canton*, 489 U.S. 378). "[T]he inadequacy of police training may serve as

the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388.

The Court further held that deliberate indifference can arise when:

> in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need. In that event, the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury.

*Id.* at 390.

To establish such a deliberate or conscious choice, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." *Gold*, 151 F.3d at 1350. In the instant case, during the course of discovery, Plaintiff has not uncovered facts sufficient to prove that Defendant Williston "knew of a need to train" Defendant Fortney in a particular area and "made a deliberate choice" not to take any action.[7] Therefore, the Court grants Defendant's summary judgment as to Plaintiff's claim of negligent training against Defendant Williston.

G.      *Negligent Supervision/Retention*

Negligent supervision or retention occurs when, during the course of employment, an employer becomes aware, or should have become aware, of problems with an employee indicating his or her unfitness, but fails to take further action to correct such problems. *Duquesne v. City of Miami Beach*, No. 12-20575-CIV, 2012 WL 3061603, at *10 (S.D. Fla. July 26, 2012).

---

[7] It is also important to note that Plaintiff has not specifically articulated the damage he has suffered as a result of Defendant Williston's alleged negligent training of Defendant Fortney. The Court is therefore assuming, *arguendo*, that Plaintiff's claim rests upon the physical discomfort he suffered while being handcuffed using plastic flexcuffs.

To state a claim for negligent retention, a plaintiff proffers evidence demonstrating that the defendant was on notice of the "harmful propensities of the employees." *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (citing *Willis v. Dade County Sch. Bd.*, 411 So. 2d 245, 246 n.1 (Fla. Dist. Ct. App. 1982)).

In the instant action, Plaintiff once again fails to specifically allege what evidence was uncovered during the course of discovery to support a claim for negligent supervision against Defendant Williston. There is no evidence put forth by Plaintiff demonstrating that Defendant Williston was on notice of Defendant Fortney's alleged inability to properly affix flexcufs. Again, the Court may only assume that this is the harm Plaintiff asserts he has suffered as a result of Defendant Williston's negligent supervision. Based on the lack of evidence supporting Plaintiff's claim – as well as Plaintiff's failure to specifically address the damage it complains to have suffered as a result of Defendant Williston's alleged negligent retention – the Court grants Defendant Williston's motion for summary judgment as to this claim.

H.     *Vicarious Liability*

Finally, Plaintiff Frasier claims that Defendant Williston is vicariously liable under the theory of respondent superior for the "negligence, actions, inactions, and/or physical assault" by Defendants Fortney, Procter and Strow. (Doc. 43 at 20-21). Plaintiff alleges he suffered injury and harm as a direct and proximate result of Defendants' physical assault on Plaintiff. (Doc. 43 at 20-21).  The complaint only states that physical assault, and not negligence, is the cause of Plaintiff's injury and harm, even though Plaintiff included negligence as a basis for Williston's vicarious liability. (Doc. 43 at 20-21).  Furthermore, Plaintiff does not specifically articulate the

physical assault, but the claim is presumed to arise from Defendants' placing flexcuffs on Plaintiff's wrists during the lawful arrest. (Doc. 43 at 5).

To support his claims, Plaintiff cites to Florida Statutes § 768.28(9)(a), which states that a municipality is vicariously liable for the negligent acts of its employees committed within the course and scope of their employment. (Doc. 80). Defendant Williston refers to Plaintiff's claim as "nebulous," and argues that Plaintiff's claim – which Defendant characterizes as one "suggesting that the City would be responsible for any of the actions of its employees regardless of the nature of such acts" – does not exist under Florida law. (Doc. 72 at 21).

Pursuant to Fla. Stat. § 768.28(1), a municipality waives sovereign immunity for tort liability in actions caused by the negligence or wrongful acts of its employees if a private person would be liable under the same circumstances. A municipality is liable "in the same manner and to the same extent as a private individual under like circumstances." Fla. Stat. § 768.28(5). "Florida courts have universally held that § 768.28 'does not create a new cause of action but provides an additional remedy for causes of actions which otherwise exist.'" *Spencer v. City of West Palm Beach*, No. 15-CV-80019, 2015 WL 4651089, at *5 (S.D. Fla. Aug. 5, 2015) (citing *Airport Sign Corp. v. Dade Cnty.*, 400 So. 2d 828, 829 (Fla. Dist. Ct. App. 1981)). A plaintiff is not required to bring an action against both the municipality and individual employee. *See Busby v. City of Orlando*, 913 F.2d 764, 776 (11th Cir. 1991). However, "[t]o prevail on a theory of vicarious liability against the City under Fla. Stat. §768.28, [Plaintiff] had to show liability on the part of . . . the City's employee." *Laster v. City of Tampa Police Dep't.*, 575 Fed. Appx. 869, 873 (11th Cir. 2014).

To find Williston vicariously liable to Plaintiff under *respondeat superior*, this Court must find that an employee of Williston, as a private person, would be liable to Plaintiff under

the same circumstances. *See Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 916 (Fla. 1985). The facts of this case do not support a cause of action for either physical assault or negligence against any Defendant, individually. Therefore, Williston is not vicariously liable under *respondeat superior*.

First, there is no cause of action for Plaintiff's physical assault claim, as it must be based on the intentional tort of battery. *See City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). Florida law does not recognize a cause of action for an officer's negligent use of force during a lawful arrest. *Id.; see also Btesh v. City of Maitland*, No. 6:10-cv-71-Orl-19DAB, 2011 WL 3269647, at *39 n.35 (M.D. Fla. July 29, 2011). "[I]t is not possible to have a cause of action for 'negligent' use of excessive force because there is no such thing as the 'negligent' commission of an 'intentional' tort." *Sanders*, 672 So. 2d at 48.

This Court already determined that Defendants Fortney, Bell, and Tummond are entitled to summary judgement on Plaintiff's battery claim in Count VIII since Defendants' use of force was reasonably necessary to effectuate Plaintiff's arrest. *See Soto v. City of Miami Beach*, 26 F. Supp. 3d 1304, 1311 (S.D. Fla. 2014). Since the individual Defendants were found to not be liable for physical assault, this Court finds that Williston is not vicariously liable for Defendants' lawful conduct. *See, e.g.*, *Btesh*, 2011 WL 3269647, at *39 (finding a city not liable for the conduct of a police officer when the officer was not personally liable under the alleged battery claim).

Similarly, there is no cause of action for Plaintiff's negligence claim. A plaintiff may plead both a battery and negligence cause of action so long as the negligence claim is "based upon a distinct act of negligence." *Sanders*, 672 So. 2d at 48. The distinct act of negligence must

"pertain to something other than the actual application of force during the course of the arrest."

*Id.*

In response to Defendants' motion for summary judgment, Plaintiff stated that Williston is vicariously liable for Defendant Fortney's actions and negligence. (Doc. 80 at 24-25). Plaintiff stated that he "has alleged multiple, specific intentional and negligent acts, on the part of Fortney, in particular, in paragraphs 1-22 of Plaintiff's second amended complaint." (Doc. 80 at 25). In paragraphs 1-22 of the complaint, Plaintiff discusses the mistaken identity, arrest, and application of flexcuffs. (Doc. 43 at 3-6). Specifically, Plaintiff stated the Defendants, including Fortney, arrested Plaintiff and placed flexcuffs on Plaintiff's wrists. (Doc. 43 at 3). Later, Plaintiff acknowledged that "Bell placed the [flexcuffs] on [Plaintiff's] wrists while Fortney held [Plaintiff's] arm behind his back." (Doc. 81 at 24). Additionally, Plaintiff alleged the flexcuffs "got turned around and were binding, painful and injuring Plaintiff." (Doc. 43 at 3). Finally, Plaintiff alleged the Defendants were aware that the flexcuffs were hurting Plaintiff. (Doc. 43 at 3, 5-6).

Therefore, Plaintiff claims that Williston's vicarious liability arises out of Defendants' mistaken identity and application of flexcuffs during the lawful arrest. This Court already determined that Defendants' mistakes in arresting Plaintiff were reasonable in light of circumstances. Thus, Williston is not vicariously liable to Plaintiff for Defendants' mistaken identity.

Plaintiff's remaining support for the vicarious liability claim is Defendants placing the flexcuffs on Plaintiff's wrist. That claim pertains to the application of force during the lawful arrest; therefore, Plaintiff failed to allege a successful negligence claim. *See Sanders*, 672 So. 2d at 48. Furthermore, in Count XI, Plaintiff only included physical assault as the direct and

proximate cause of Plaintiff's injury and harm. (Doc. 43 at 20-21). The failure to include

negligence as a cause of the injury further supports a finding that Plaintiff's vicarious liability

claim is based solely on Defendants' use of flexcuffs during the arrest.

To recover under a negligence claim, Plaintiff must prove that negligence was a direct

and proximate cause of Plaintiff's harm. *See Watson v. City of Hialeah*, 552 So. 2d 1146, 1149

(Fla. Dist. Ct. App. 1989). Without proving negligence was a direct and proximate cause of

harm, Plaintiff has no underlying negligence claim. For example, in *Btesh*, the District Court

granted the City of Maitland summary judgment on a plaintiff's negligent hiring, training, and

supervision claims under §768.28 because those actions were not the proximate cause of the

plaintiff's injury. 2011 WL 3269647, at *39. Because the facts do not support a cause of action

against any of the Defendants individually, there is no basis to hold Williston vicariously liable

under the doctrine of *respondeat superior*, and their motion for summary judgment is thus

granted as to this issue.


### III. CONCLUSION

For the aforementioned reasons, this Court concludes that Defendants' motions for

summary judgment, Docs. 69 and 72, are due to be granted and claims against Defendants are to

be dismissed.

As a matter of housekeeping, it is worth noting that there is one remaining Defendant,

Sheriff Bobby McCallum, who did not submit a motion for summary judgment. However, the

claims that are directed at him in his official capacity as a sheriff for Levy County Sheriff's

Office are similar to those brought against the City of Williston. The Court is inclined to grant

*sua sponte* summary judgment in Defendant McCallum's favor as well as the law and analysis is

the same for those claims against him. However, as McCallum brought no motion, Plaintiff is

therefore entitled to show this Court why all claims against McCallum should not be dismissed.

Accordingly, Plaintiff has thirty days to show cause, supported by evidence, why his claims

against Defendant McCallum should not be dismissed.

Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1.  Defendants Scott Tummond and Roger Bell's Motion for Summary Judgment, Doc. 69, is GRANTED.

2.  Defendants City of Williston and Matthew Fortney's Motion for Summary Judgment, Doc. 72, is GRANTED.

3.  Claims against Defendants Tummond, Bell, Fortney, and City of Williston are dismissed.

4.  Plaintiff has thirty (30) days from the date of this order to show cause why the claims against Defendant Bobby McCallum should not be dismissed.

**DONE AND ORDERED** this  *21ˢᵗ*  day of March, 2016

*s/Maurice M. Paul*

Maurice M. Paul, Senior District Judge